The next case this morning is 522-0625, North County Development, LLC, et cetera, v. Village of Cobden. Arguing for the appellant is Patricia Hope. Arguing for the appellee is Joseph Blyer. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. So with all that being said, Ms. Hope, you ready to proceed? I am, Your Honor. Then go right ahead. May it please the court. North County Development Company purchased real estate from Dorothy Fleener in June of 2020. North County's real estate surrounds the Fleener property on the south, east, and north sides. The west side of both properties is bounded by a highway. The Village of Cobden built an underground gas pipeline on private property, which is now owned by North County. That property is outside of the Village of Cobden's boundaries. The Village has an express easement for its pipeline on the south side of North County's property for the south 255 feet. That is south of Dorothy Fleener's property. That easement refers to plans that are recorded in the Union County Recorder's Office on March 1st, 1967. The Village has no express easement for its pipeline north of the Fleener property. I'm going to refer to that property north of the Fleener property as the entrance parcel so that we're consistently clear about which piece I'm talking about. The application of the law to those undisputed facts establishes that the Village of Cobden had no authority to construct its pipeline on that entrance parcel outside its Village's boundaries without an easement. It is the Village of Cobden's position that it has a prescriptive easement for that pipeline because of the plans that were referred to in the easement for that south 255 feet. Those plans do not constitute notice sufficient to support a prescriptive easement on the entrance parcel. Even if those plans were sufficient notice, the Village cannot claim a prescriptive easement when its construction of the pipeline on the entrance parcel was without authority and had no legal effect. It is fundamental that municipalities have only those powers that are given to them by the Constitution and by the statute. And those powers that they are given may be exercised within the corporate boundaries of the Village without a specific statutory authority to allow them to do so. There is no specific statutory authority for the Village of Cobden to construct its pipeline outside of the Village boundaries. The Illinois Constitution also provides that private property cannot be taken for the benefit of a public body without just compensation. So when we look at the trial court's order, it relies on a case Texaco Inc versus Short to determine that a prescriptive easement is not a taking. The Texaco case did not involve an easement by prescription. It addressed the failure of landowners to comply with Indiana's Mineral Lapse Act. That act was held by the court to be within the police powers of the state and therefore it did not constitute a taking. That is clearly distinguishable from our case because Cobden has no legitimate police power or statutory authority to go outside of its Village boundaries to build a pipeline. It is clear from the Illinois case of Rosenthal versus Crystal Lake that the construction of an underground pipeline on private property is a taking subject to the Illinois Constitution. In Rosenthal, the court applied the test for whether there was a taking. Has there been an actual physical invasion of tangible property? That test is also recited in Stalen versus Forest Preservation District, which described one type of taking as where there is even the slightest physical intrusion onto the property by the government and despite any legitimate public purpose, a taking requiring compensation has occurred. So when the Village constructed its underground pipeline, it physically invaded the entrance parcel without authority to do so. And so then the Village says, even if we don't have statutory authority, we have a 20-year statute of limitations that prevents North County from bringing its action because we've proven this right to have a prescriptive easement. One of the elements for a prescriptive easement is actual or constructive notice. In Rosenthal, the court held that an underground sewer was not sufficiently open and notorious for purposes of that 20-year statute of limitations. Seafelt versus Lincoln also tells us because the pipeline is underground and not visible, it cannot itself be actual notice to the landowner of its existence. In Seafelt, the city had relied upon a special assessment role as a public record in the landowner's chain of title as constructive notice. The city failed to prove that that special assessment role included the property at issue and the court held that it did not therefore constitute constructive notice. So the Village then points to those recorded plans as constructive notice of its pipeline. The problem with those recorded plans as constructive notice is twofold. The surveyor Raymond Whiteside testified at trial that he did not locate the recorded plans because his access to the Union County Courthouse was restricted due to COVID. As we all know, restrictions imposed by the COVID pandemic changed much of what we relied on as normal and customary. Constructive notice by recorded documents is defective when the recorded documents are not available to the public. The second defect with the recorded plans as constructive notice is with what is in the chain of title for North County's real estate. The chain of title includes the easement from the herrings to the Village of Cobden for its pipeline. That easement is only for the South 255 feet of North County's real estate. And it says, and I quote, said gas transmission line to be relocated as shown on the recorded plans. North County's entrance to its real estate is to be located on the portion of the real estate that is North of the Fleener property. The Fleener property separates the South 255 feet and the entrance parcel. When making plans to construct its entrance to comply with the Illinois Department of Transportation's requirements, North County could reasonably rely on that easement which did not include the entrance parcel. North County's not building its entrance on that South 255 feet. And there is nothing in that recorded easement that says the recorded plans would show the existence of an underground pipeline North of that easement. North County would have had no reason to investigate anything other than that 255 feet if it were going to build there. So when we look at that issue of notice, we can look back to Postal Telegraph Company versus Eaton. In Postal Telegraph, the company constructed a telegraph line with telegraph poles on private property with the consent of the County Board. The court held that even though Mr. Eaton purchased the property with the very obvious telephone poles on it, that the County Board had no authority to consent to this construction and bind that private property owner. And that because they had no authority to give consent, then Eaton had the right to ejectment because the poles were placed on the property without just compensation. The court in Postal Telegraph also says that when the company took possession without compensation, it required no rights against the original landowner at the time it placed the poles on the property and if the grantor had a right to ejectment, that Eaton also had a right to ejectment. And then Postal Telegraph also tells us that whether North County had notice of the existence of the underground pipeline is irrelevant. The village had no authority to construct the pipeline where it did and therefore the village did not acquire any rights against the owner of the land at the time the pipeline was constructed, nor against any of that owner's successors and titles for purposes of ejectment. That same concept applies when we talk about acquiring rights against owners for trespass. The Rosenthal Court is very clear when it says that where a trespass is continuing in that place or an underground sewer in our case for an underground pipeline, any person in possession of the property at any time during the continuing trespass can maintain an action. Without that express easement and the village clearly knew it needed one because it got the easement from the herrings, without a prescriptive easement because there's no notice and without statutory authority, the village has no right to maintain its underground pipeline on the entrance parcel. So when it built that pipeline without an easement, it acquired no rights against the original owner of the property, which is now owned by North County and North County has the same rights as that original owner when the pipeline was constructed. The village of Cobden is trespassing on North County's entrance parcel and is subject to ejectment and damages for that trespass. Thank you. Well, thank you, counsel. Before we move on, Justice McHaney or Justice Cage, do you have any questions? No questions. No questions. Thank you. Thank you. Obviously you'll be given your time for rebuttal. Mr. Blyer, go right ahead. Thank you. May I please report? I'm Joe Blyer. I'm here representing the village of Cobden. We're here today asking this honorable court to affirm Judge Edmund's ruling, both finding in favor of Cobden against the plaintiff as to count one and count two of the complaint. I think this case factually is kind of very simple. I think it's clear that there's five uncontested facts that will allow this court to affirm Judge Edmund's ruling. One, there's no question the property was purchased by North County on August 20th of 2020. At the time of the conveyance, I believe the gas transmission line existed and it existed since 1967. And I think the most critical point in favor of the village of Cobden is that the as-built gas transmission line was filed with the county clerk in the Platt book five, page 163. And also that the gas line was there for 20 years prior to the plaintiff obtaining the property and filing the ejectment claim. Your honors, I think it's very clear. There's no question that the gas transmission line in this area, as Ms. Holk referred to as the entrance area, was outside the highway right of way. And I'm not saying there doesn't, easement doesn't exist. I will say this. So we must consider it doesn't exist because we haven't found one yet. So the issue is this as-built line and filed in the Platt book. And that is the whole basis of the theory or to allow this court to affirm the opinion. We go back to title and I should say there was some question about Mr. Whiteside not finding this. I don't believe there's any case law that allows the COVID pandemic to allow for, fail to find anything. In fact, if you read the record, he said his access to the courthouse was limited. And a matter of fact, he further says he didn't find anything. He didn't find the Platt map. And your honors, that's why we have this as-built line platted. It's to give notice. It's in the chain of title. I think also that the two easements that were south on this property refer to the Platt map, refer to the chain of title that would direct someone purchasing the property to locate the Platt map. If in fact, we don't, if the court would reverse Judge Edmonds, it would essentially say that the as-built Platt map, something in the chain of title, something that's recorded, it would upend the transfer of property in the state of Illinois if we can't rely upon something being filed with the county clerk to give notice to the world of the existence of something that affects someone's property. If you reverse it, it's gonna upend the property law in that regard that won't allow anybody to rely upon what's filed in the county courthouse to give notice of anything that affects someone's property. Well, let me ask you a question, Mr. Blatt. Yes, sir. Maybe I should have asked Ms. Holt and I'll give her the opportunity to address it. If I read the record or there was some testimony that, I'm looking at my notes here, that Union County Abstract, Susan Holterfield, did what's called a letter search for the property. I think I found that in the record. Is that correct? I think, was that in the record? I don't remember being at the trial. I know I asked someone to do a letter search of this particular property  It didn't come up at the bench trial, Your Honor, and I apologize that, and I can't recall, I know I asked her to do a letter search, but I wasn't aware that it was filed in the record and I apologize for that. I don't think the letter search was, I've just referenced, I think there was testimony or something I found that a letter search was done. But my real question is, did the plaintiff get a title commitment and a proper search done through Union County Abstract, and I believe it's Chicago Title Insurance, was that done? Your Honor, as far as I know, of course, I was not aware of it. That was nothing brought up at the trial, and I wouldn't be privy to that information as to the title policy or what was any title commitment. It was not offered at the trial, and certainly as the village of Cobden, I would not have access or privity to any title policy or any exceptions that were provided to the purchaser by the Chicago Title or the abstractor. But- The abstractor had done a proper search. I think this deals with the argument that the as-built flat would have been found or should have been found and would be in that title search. That is correct, Your Honor. Like Judge Edmund said, we took a break and I walked right down the stairs, talked to the county clerk, and I said, hey, I need to find this flat. And we went back, and it wasn't in real good order. I mean, it was just a stack of flats, and within a couple of minutes, I dug through it and found book five, and so yes. And I think another thing as you pick up on that point, Your Honor, when he was doing a search for the whole property, he would find the easements that were of record to the south end of this property, not where the entrance was. And it's clear that the easement refers to the pipeline that's platted in flat book number five, page 163. So, I mean, there was plenty of notice that if anybody doing a search would have found and should have found and could have found this existence of this as-built line right through this property where it was. And judges, you're well aware, that's why we have title searches, that's why we have things filed in the courthouse so that someone will have notice of the existence of something that affects the piece of property. If not, how could you ever be, if it wasn't filed, and if the plat book hadn't been found or I hadn't found it or it wasn't platted, we wouldn't be here today. But I think that's the golden story or the star, so to speak, that this plat book as-built plan simply clearly shows the existence of this pipeline where it was from 1967 up to the day the plaintiff purchased this piece of property. Mr. Blyer, you agree that the plaintiff filed within 20 years of purchasing the property, correct? Yes, Your Honor. And if the Rosenthal case says that under these circumstances, it's a continuing trespass and that you can file within the 20 years that you purchased the property, how do you distinguish Rosenthal from this case? Well, I distinguish Rosenthal from, there are two ways to distinguish it, but I'm gonna distinguish it in the question you asked. The first distinguish is it was an underground sewer line and they couldn't see it, whereas compared to this where there's a plat map. To answer your question- Wait, this is an underground pipeline. Yes, but in Rosenthal, it was an underground sewer that had no note that was not platted or no one, it was not platted or the existence of it was not filed in the county clerk's office. But it was a continuing trespass. Judge, you know, yes- So let me re-ask this question. How does the as-built notice give you, the village of Compton, any right to this property? Well, Judge- Property interest. How does that give you, the village, any property interest just because you filed that you built this piece of pipeline? It gives us, I don't, I'm not claiming adverse possession of this property. Right, how do you have a property interest? What gives the village of Compton any right to this property? Well, Judge, I guess your question would be, what gives the village any right to this property would be the fact that it was built and that the plaintiff did not bring any action within time frame to contest whether or not the city or the village had an interest. So if there's no property interest, it's a trespass. There is a property interest by the prescriptive easement. Okay, can you tell me any case in Illinois where a village, a municipality, such as the village of Compton, has obtained a prescriptive easement over property outside of its limits? Can you cite any case? Two things about that, Judge. Can you cite any case? No, and they cannot cite any, there's no case that says the village can't obtain a prescriptive easement. So we have here any compensation paid to the property owners in this case when the pipeline was laid? Judge, I don't know whether or not there was any compensation paid in 1967 or not. I can't answer that question. And there's nothing in the record. And I might add, whether the village has the authority to build something outside its city limits was not raised by the plaintiff at the trial court. And in fact, was not even raised until the reply brief in the case. So- Well, but you claimed a prescriptive easement, didn't you? That is correct. So that in and of itself raises a property interest. And I believe that the facts of the case, that we, it'd be like anybody, it's like any easement. If my property is next to yours and I start using it to access my property behind your property, driving across of it, eventually- Well, that might be- There's no question I have no interest at the beginning, but once I continue to use a piece of your property to access my property, if you don't give me permission or don't stop me or tell me that it's not adverse through the course of the time, it's gonna ripen into a property interest. And that's what happened in this case. It's like all adverse possession or any type of prescriptive easement. I agree, maybe at the beginning of it, you don't have a property right, but that's the case law that over the 20-year course of your continued use of the property, you acquire the property interest. And that's what happened in this case. There may not be an interest right at the beginning of 1967, but when the village of Cobden continued to use it as an easement or continued to use the pipeline, their property interest ripens after 20 years of the continued use, if you also follow the adverse hostile, all those other things. You're correct. I don't believe there was a property interest when they built it, but there is a property interest of a prescriptive easement after the time of 20 years. And did the trial court find that the village of Cobden has a property interest now? They found that we had a prescriptive easement, yes, which would be a property interest. Did the court say out and come out and say, hey, this is a property interest on a prescriptive easement? No, but the court found a prescriptive easement over the facts of the case, listening to the manifest, I mean, listen to all the facts, found that there was a prescriptive easement, which is a property right. So I mean- How do you distinguish Rosenthal in this case? How do I distinguish Rosenthal? Rosenthal would be exactly like this if it were not built for the as-built plans. So any village in your mind can build outside of an easement, outside of a highway right away, and wait 20 years as long as they file some document that's not ordinarily in the chain of title and call it notice. I think- An as-built plan is not something that's an easement. Correct. An as-built plan is something they filed, but it's not an ordinary document in the chain of title. I don't necessarily disagree in this particular case since the easements that were on this property refer to the plat map. So I do think it was in the chain of title. It was in the chain of title because the easements across this property refer to the plat, and so therefore it's in the chain of title. And Your Honor, I think, to be honest with your question, if I went out and built a pipeline across your property today, I think you could have me ejected. But if you sit there and say, hey, the gas line's there and you just don't, you wait and continue to do nothing for the 20 years and I continue to use it, you have notice, you don't give me permission, all of that, all of those things that we need to prescriptive easement, I think I'm in. And I think that is what, that's the whole basis of this case. Was it, had they done something within the 20 years? Had they, the first owner given the village permission or said anything like, you know, you didn't take it, we're gonna give you permission to put it there. I don't believe it ripens into prescriptive easement. But I think the facts of this case are very similar. I know I got 22 seconds. So that this, if it wasn't for the as-built plans, we wouldn't be here. And the as-built plans was in the chain of title, it provided notice, and the village continued to use this prescriptive easement over the 20-year course. Therefore, after that, it did ripen into a property interest. And therefore, the village does have a property interest as a prescriptive easement across this property, which would be the basis of Judge Edmund's ruling. I see my time is zero. I have one more question, if I could. In the briefing, or the record, it was alluded to that this pipeline can be moved. Is that not true? Is there a remedy in this case, short of ejectment? Judge, I will say this, it's not in the record. Anything could be moved. It's not in the record. I think one estimate was like about $600,000. Okay, I thought I saw that. I thought I saw a reference to that. Which the village doesn't have. Okay, all right, thank you. That's not in the record, and I wouldn't put it unless you, I wouldn't have said it except that you asked the question. So I thought I should answer the question since you asked it. Thank you, Mr. Blyer. Thank you, Your Honor. Any other questions? No questions. Thank you, Mr. Blyer. Thank you. Ms. Hogue, go right ahead with your rebuttal. Yes, thank you. To answer your initial question, Justice Bowie, about the title commitment, we got a letter search. It was not introduced into the record. Because the intended purpose of this property had to do with a marijuana grow facility, the title company was not able to issue a title commitment because of federal restrictions. So there is no title commitment. So that's why it's not in the record. The letter search is not in the record. With regard to Mr. Blyer's argument about prescriptive easements, with all due respect to Mr. Blyer, he used himself in his example. We're not talking about an individual who drives across the neighbor's property for 20 years and doesn't get stopped. We're talking about a municipality. Municipalities are governed by the Illinois Constitution. If they don't have a specific power and they don't have statutory authority, they can't act outside of their corporate boundaries. The Rosenthal case actually ended with the court holding that there would be a stay on any ejectment or trespass remedies to allow the city to file an eminent domain action. The sewer line in question in Rosenthal was inside the city limits. Our pipeline is not inside the city limits. Notice of the existence of an as-built pipeline, which you only get to if you are curious enough to investigate the 255 feet that isn't involved in what the North County intends to instruct as its entrance parcel. It's down to the South. The reference to those as-built plans is in that easement. That easement isn't relevant to the entrance parcel and there would have been no reason to discover it. Now, if the title company had issued a title commitment, I'm assuming it would have brought that out. The letter search did disclose the easement, but it wasn't relevant to where we were building the entrance parcel. So that even if that as-built plan were noticed, it still doesn't cure the problem of the village of Cobden going outside of its village boundaries, building a pipeline on private property, and there's no proof that there was any compensation. There's no evidence at all one way or the other. And it is subject to injectment. It's not supposed to be there. It wasn't supposed to be there when they did it. If you don't have authority as a public body, you can't get authority by staying somewhere for 20 years. It just doesn't work. So that they're subject to injectment, they're a trespasser, and North County is entitled to remedies for that. Does that end your rebuttal? It does, thank you. Okay. Before we let you two go, Justice McHaney or Justice Cage, do you have any final questions? No questions. No further questions. Well, counsel, thank you. Obviously, we'll take the matter under advisement and we will reach you in order in due course.